DAN. E. O'CONNELL v. ST. PAUL CITY RAILWAY COMPANY.[1]

May 21, 1896.

Nos. 9843—(117).

**Street Railway—Injury to Traveler—Contributory Negligence.**

> *Held,* in an action brought to recover damages received in a collision be-
> tween a cable car and plaintiff, who was driving a horse attached to a
> wagon, that, construing plaintiff's testimony as to the manner of the col-
> lision in connection with a certain special finding of the jury, he was guilty
> of contributory negligence, and that a verdict in his favor must be set aside.

Appeal by defendant from an order of the district court for Ram-
sey county, Willis, J., denying a motion for a new trial, after a verdict
in favor of plaintiff for $300.   Reversed.

*Munn, Boyesen & Thygeson,* for appellant.
*John E. Stryker,* for respondent.

COLLINS, J.   This action grew out of a collision on Selby avenue,
in St. Paul, between plaintiff, who was driving a horse, attached to
a wagon, in an easterly direction, and a grip car running westerly on
defendant's cable line.   The negligence attributed to defendant, ac-
cording to the complaint, was in maintaining, at the point in ques-
tion, a cable slit of an unusual and dangerous width and construc-
tion, in which plaintiff's horse caught his foot, and, while so caught,
the employé in charge of the grip car ran into him, causing the in-
juries complained of.   By the answer it was alleged that the injuries
were caused solely because the horse suddenly and unexpectedly
turned from his course, and jumped directly in front of the grip car
as it was being propelled along the rails in the usual and ordinary
manner.   It was also alleged that the slit was not unusually or dan-
gerously wide, or of unusual or dangerous construction, and, further,
that the horse was not caught in the slit.   At the trial two special
questions were submitted to the jury,—the first, was the horse caught
in the cable slit? the second, did the horse suddenly and unexpectedly
turn from his course, and jump in front of the car?   Both of these
questions were answered in the negative, and then the jury returned

[1] Reported in 67 N. W. 363.

a general verdict for plaintiff, but in a ridiculously small amount, if he was entitled to recover at all.

By reason of the negative answer to the first of these questions, one very important feature has been eliminated from the plaintiff's case. The defendant has thereby been relieved of the consequences of a charge that the cable slit was unusually and dangerously wide, and when examining the evidence for the purpose of passing upon the contention of defendant's counsel that, from plaintiff's own testimony, it appeared that defendant's employés were not negligent in any degree, and also that it was conclusively established that plaintiff was guilty of contributory negligence, this court is relieved from a consideration of testimony tending to show that the horse did catch one of his front hoofs in the slit, and was unable to move.

Thus stripped, the evidence, construed most favorably for plaintiff, was as follows: He was well acquainted in the locality; knew about the movements of the cable cars, and the method of handling. He knew at what rate of speed the cars usually ran,—about 12 miles an hour,—and supposed the car which struck his horse was running at about that rate. He knew that sometimes the calks upon horses' shoes would catch in the slit, and "made it a point to walk across the cable track. I had been caught two or three times." While driving east, in broad daylight, on the north side of the track, at a sharp trot, —about eight miles an hour,—he saw the car approaching, when it was some distance away; and then he turned his horse to cross diagonally to the south side of the track, slackening the speed of his horse as he turned. When asked to state the distance from the car to himself when he started to cross, his answer was, "Well, I couldn't tell, any more than what I had always considered a safe distance." Upon being pressed for a further estimate of the distance, he replied, "Well, I should put it about seventy-five to one hundred feet." The plaintiff also gave it as his opinion that when the horse first reached the rails the car was from 50 to 60 feet away, and, further, that about two seconds of time would have then been required for crossing and clearing the path of the approaching car.

So that, according to his version of the occurrence, plaintiff undertook to effect a crossing which would consume two seconds, if he moved along without delay, while the car—running upon a fixed track, and unable to deviate therefrom—passed over ground which it

would cover in four or five seconds, as plaintiff well knew. To put it in another form, the car would be at the crossing point in four or five seconds, and plaintiff deliberately took the chances of driving his horse and wagon in front of it, in occupying its pathway for half that time, and in safely escaping a collision. And this was without any real or pressing necessity, for the only reason given by plaintiff for crossing the track at all was that when he saw the car, 75 or 100 feet distant, there was a pair of horses, drawing a wagon, about abreast of the car, coming towards him on a walk, and on the same side of the track, and that he crossed to avoid meeting the car and the team at the same time,—a thing which would not have naturally occurred, for the car, running 12 miles an hour, would have passed the walking team and the wagon long before the latter and plaintiff's horse met. And, even if this were not the case, common prudence would have suggested that plaintiff stop his horse where he was until the car had passed him, rather than depend upon two or three seconds of time, which he might have, as a margin, should he cross the track without being delayed. But the finding of the jury that the horse was not caught in the slit, taken in connection with the fact—which stands admitted—that he was struck by the car on the left fore shoulder, and therefore before he had more than fairly gotten upon the track, shows quite conclusively that, when plaintiff attempted to drive across, the car was much nearer than he anticipated, and was almost upon him. In fact, if the horse did not stop of his own accord, or, for some unexplained reason, was not stopped by its driver, he walked no more than 8 or 10 feet after he was turned from his course before the collision came. So, if we assume that he walked rapidly,—say at the rate of 3 miles an hour,—the car could not have been to exceed 40 feet distant when plaintiff first started the animal in the direction of the track. It seems evident that plaintiff placed himself, according to his own story, in a place of great danger, and that the proximate cause of the collision was his own negligence. For that reason the verdict cannot stand.

Order reversed, and a new trial granted.